UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FELICIA HAYES,<br><br>　　　　　Plaintiff,<br>　v.<br>CLARK COUNTY SCHOOL DISTRICT,<br><br>　　　　　Defendant. | Case No. 2:22-cv-02167-MMD-NJK<br><br>ORDER |

I.    **SUMMARY**

Plaintiff Felicia Hayes sued her former employer, Defendant Clark County School District ("CCSD"), for alleged employment discrimination and other related claims. (ECF No. 28 ("First Amended Complaint" or "FAC").) Before the Court is Defendant's motion for summary judgment (ECF No. 36 ("Motion")).[1] As explained below, the Court grants the Motion as to Plaintiff's age discrimination and retaliation claims and denies the Motion as to Plaintiff's racial discrimination claim.

II.    **BACKGROUND**[2]

Plaintiff is an African American woman who started working for Defendant in the early 2000s. (ECF No. 28 at 2.) In the 2007-2008 school year, Plaintiff began working as a substitute teacher at Jim Bridger Middle School ("Bridger MS"). (ECF No. 36 at 3; ECF

---

[1]Plaintiff responded (ECF No. 40), and Defendant replied (ECF No. 41).

[2]The following facts are undisputed unless otherwise noted. The Court only describes facts that are pertinent to its discussion of the Motion.

To the extent Plaintiff made general hearsay objections in response to Defendant's "statement of undisputed material facts" (ECF No. 40 at 5-6), the Court overrules them because it agrees with Defendant that the Court may consider the evidence supporting those statements of fact, as their contents can be testified to at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

No. 36-1 at 6.) For the 2008-2009 school year, Defendant hired Plaintiff as a licensed special education teacher at Bridger MS. (ECF No. 36-1 at 6; ECF No. 36-2 at 59.)

Under the Nevada Educator Performance Framework ("NEPF"), CCSD teachers' performance levels are scored from "1" to "4," with "1" being the lowest possible score, and based on those scores, teachers are rated as "Ineffective," "Developing," "Effective," or "Highly Effective." (ECF No. 36-2 at 51-53; ECF No. 36-1 at 61, 68.)

For the 2015-2016 school year, Plaintiff received an "Effective" evaluation rating. (ECF No. 36-1 at 87-89.) For the 2016-2017 school year, Plaintiff received another "Effective" evaluation rating. (*Id.* at 77-79.) For the 2017-2018 school year, Plaintiff received a "Developing" evaluation rating. (*Id.* at 69-70.)

Assistant Principal Jennifer Leifer supervised Plaintiff during the 2018-2019, 2019-2020, and 2020-2021 school years. (ECF No. 41-1 at 21.) Leifer was responsible for issuing disciplinary documents and evaluations regarding Plaintiff's teaching performance during those years. (*Id.*) For the 2018-2019 and 2019-2020 school years, Plaintiff received "Developing" evaluation ratings. (ECF No. 36-1 at 61-68.)

Sometime before or around the beginning of the 2020-2021 school year, Plaintiff requested that Leifer not be her supervisor, but Plaintiff was not assigned a different supervisor. (ECF No. 36-1 at 30-32; ECF No. 36-2 at 14, 29, 44-45.)

At the start of the 2020-2021 school year, Plaintiff was transferred from her self-contained classroom to co-teaching duties, and a white teacher, Kyla Fisher, was assigned to Plaintiff's former classroom. (ECF No. 36-1 at 30; ECF No. 40-1 at 4-5; ECF No. 40-2 at 3.)

On March 24, 2021, Leifer rated Plaintiff as "Ineffective" in her performance evaluation for the 2020-2021 school year, scoring Plaintiff with mostly "1's" in every performance category. (ECF No. 36-1 at 55-59.)

According to Plaintiff, none of the other teachers she co-taught with during the 2020-2021 school year—who were all white—received "1's" in their evaluations. (ECF No. 36-1 at 21-28; ECF No. 40 at 3.)

On April 23, 2021, Defendant issued a notice of non-reemployment to Plaintiff. (ECF No. 36-2 at 18.) Defendant's decision not to reemploy Plaintiff for the 2021-2022 school year was based on her "ineffective" evaluation rating for the 2020-2021 school year (*id.* at 12), and the notice specifically stated that the reason was Plaintiff's "failure to satisfy the performance standards of [CCSD], which was evidenced in the evaluation and/or any disciplinary documents [she] received [that] contract year" (*id.* at 18). According to Leifer, Plaintiff was possibly replaced by one of two teachers who started in the fall of 2021, one of whom was white and the other was African American and Hawaiian. (*Id.* at 24-25.)

On January 6, 2022, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and Nevada Equal Rights Commission, alleging racial discrimination, age discrimination, and retaliation. (ECF No. 28 at 7.)

In the FAC, Plaintiff asserts three causes of action under Title VII and the Age Discrimination in Employment Act: (1) racial discrimination; (2) age discrimination; and (3) retaliation. (ECF No. 28.)

**III.    DISCUSSION**

Defendant moves for summary judgment on all three of Plaintiff's claims. (ECF No. 36.) Plaintiff opposes Defendant's Motion as to her racial discrimination claim but "does not oppose" the Motion as to her age discrimination and retaliation claims. (ECF No. 40 at 1.) The Court finds that Defendant meets its initial burden of demonstrating the absence of an issue of material fact on the age discrimination and retaliation claims (ECF No. 36 at 24-26), and Plaintiff fails to meet her shifted burden by failing to respond to any of Defendant's arguments or present any evidence in support of her age discrimination and retaliation claims. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) ("The burden of demonstrating the absence of an issue of material fact lies with the moving party. The opposing party must then 'present specific facts demonstrating that there is a factual dispute about a material issue.'"). Accordingly, the Court grants the

Motion on the age discrimination and retaliation claims and further analyzes only the racial discrimination claim below.

### A. Time Bar

Defendant first argues that, to the extent Plaintiff's racial discrimination claim is based on acts that occurred before March 12, 2021, it is statutorily time-barred, as those acts occurred more than 300 days before Plaintiff filed her EEOC charge. (ECF No. 36 at 12-14.) Plaintiff does not dispute Defendant's argument "to the extent that she is not seeking damages and/or relief for such events." (ECF No. 40 at 7.) However, Plaintiff does counter that she may rely on such "untimely" prior acts as "background evidence" to prove her racial discrimination claim. (*Id.* at 7-8.) In reply, Defendant asserts that Plaintiff concedes that any claims regarding events that occurred prior to March 12, 2021 are statutorily time-barred, but Defendant does not dispute that the Court may consider those events as "background evidence." (ECF No. 41 at 9.)

Accordingly, the parties agree that Plaintiff may only recover for acts of racial discrimination occurring on or after March 12, 2021, but the Court may and will consider events occurring before that date as background evidence in support of the racial discrimination claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."). Plaintiff's racial discrimination claim, as based on events occurring on or after March 12, 2021, is not statutorily time-barred, and the Court focuses on those events, which are: (1) Defendant's March 24, 2021 evaluation of Plaintiff that deemed her "ineffective"; and (2) Defendant's April 23, 2021 decision not to reemploy Plaintiff for the 2021-2022 school year.

### B. Racial Discrimination

Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, a plaintiff must prove: "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed [their] job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

If the plaintiff makes out a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). "If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 1124 (citation omitted).

#### 1. Prima Facie Case

Defendant concedes that Plaintiff has met the first and third elements of the prima facie case because Plaintiff is an African American woman and because her employment contract was not renewed after the 2020-2021 school year as a result of her March 24, 2021 "ineffective" evaluation rating. (ECF No. 36 at 15.) Defendant argues that Plaintiff cannot establish the second and fourth elements because she has failed to produce any evidence that she fulfilled her job requirements or that similarly situated individuals outside her protected class were treated more favorably. (*Id.* at 15-16.) Defendant meets its initial burden on summary judgment by pointing to evidence that Plaintiff received evaluations and disciplinary notices during the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 school years indicating she had performance issues to varying

degrees (ECF No. 36-1 at 54-96; ECF No. 36-2 at 1-10) and pointing out that Plaintiff cannot produce evidence to show that the other teachers were similarly situated. (ECF No. 36 at 16.)

As to satisfactory job performance, Plaintiff counters that she was a licensed special education teacher, that her fellow teachers' declarations show that she was performing satisfactorily, and that she was named teacher of the week one month before the decision to terminate her. (ECF No. 40 at 9.) Those fellow teachers, Susan Sampson, Marilyn Prosser, Jason Warren, and Pamela Avdoian, worked with Plaintiff during the 2020-2021 school year, and their declarations indicate that she was a "highly competent" teacher who performed her duties well, contrary to Leifer's evaluation of Plaintiff. (ECF No. 40-2 at 6-16.) Plaintiff's proffered screenshot of the Bridger MS website naming her as one of the "VIP Falcons of the Week" on February 15, 2021 does not provide much context (*id.* at 5), but Plaintiff's assertion that she was named teacher of the week in February 2021 is further corroborated by Avdoian's declaration (*id.* at 16). Drawing reasonable inferences in Plaintiff's favor as the non-moving party, *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), the Court finds that Plaintiff has sufficiently raised genuine issues of material fact as to whether Plaintiff performed her job satisfactorily during the relevant time.

Regarding the element of differential treatment of a similarly situated employee outside of Plaintiff's protected class, Plaintiff asserts that none of the other teachers she co-taught with during the 2020-2021 school year—who were all white—received "1's" in their evaluations, and Plaintiff was the only one who received "1's" and thus an "ineffective" evaluation rating. (ECF No. 40 at 3.) Plaintiff's deposition testimony tends to support this contention, as the testimony indicates that she had personal knowledge of these differences based on either having copies of these other teachers' 2020-2021 evaluations or having been told by these other teachers that they did not receive any "1's"

on their evaluations.[3] (ECF No. 36-1 at 21-27.) Defendant counters that Plaintiff cannot compare her evaluations to those co-teachers because they were general education teachers who had different expectations and requirements than special education teachers and were supervised and evaluated by other administrators. (ECF No. 36 at 16-17; ECF No. 36-1 at 22-27.) But, at the same time, Plaintiff's duties appear to include "generalist" teaching responsibilities (ECF No. 36 at 2; ECF No. 36-2 at 15-16), and the evaluations conducted for all CCSD teachers appear to use the same general NEPF rubric and "1" to "4" scoring system (ECF No. 36-2 at 51; ECF No. 36-1 at 61).

Drawing reasonable inferences in Plaintiff's favor and inferring that Plaintiff's job performance was satisfactory like her white co-teachers or at least not warranting "1's" in her evaluation, the Court finds that there are genuine disputes of material fact as to whether Plaintiff and her co-teachers were similarly situated and thus whether Defendant treated Plaintiff differently than similarly situated employees who do not belong to the same protected class as Plaintiff. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1116 (9th Cir. 2011) ("[W]hether the other [employees] are similarly situated to [the plaintiff] is a question of fact.").

Accordingly, the Court finds that Plaintiff has raised triable issues as to the second and fourth elements and presented the minimal evidence required to establish a prima facie case. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) ("The requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991) ("[T]he amount [of evidence] that must be produced in order to create a prima facie case is 'very little.'").

---

[3]Plaintiff did not cite to or proffer this deposition testimony herself, but under Federal Rule of Civil Procedure 56(c)(3), the Court "may consider other materials in the record" that are not cited.

### 2. Legitimate, Non-Discriminatory Reason

Next, to present a legitimate, non-discriminatory reason for Plaintiff's "ineffective" evaluation rating and termination, Defendant points to evidence of Plaintiff's poor job performance and disciplinary notices she received during the 2020-2021 school year and prior years. (ECF No. 36-1 at 54-96; ECF No. 36-2 at 1-10.) The April 2021 notice of non-reemployment that Defendant issued to Plaintiff plainly states that the reason for her non-reemployment for the 2021-2022 school year was Plaintiff's "failure to satisfy the performance standards of [CCSD], which was evidenced in the evaluation and/or any disciplinary documents [she] received [that] contract year." (ECF No. 36-2 at 18.) Accordingly, Defendant meets its burden and thus shifts the burden back to Plaintiff to present evidence of pretext to survive summary judgment.

### 3. Pretext

"A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). "Because direct evidence is so probative, the plaintiff need offer 'very little' direct evidence [of discriminatory animus] to raise a genuine issue of material fact." *Id.* at 1095 (citation omitted). "But when the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Id.* (citations omitted).

Here, Plaintiff relies on several pieces of circumstantial evidence of pretext. (ECF No. 40 at 10-11.) First, as discussed above, the Court finds that the evidence of Plaintiffs' satisfactory job performance based on the other teachers' declarations and the evidence of different evaluations compared to her white co-teachers raise genuine issues of material fact as to whether Plaintiff and her co-teachers were similarly situated to warrant comparison in the pretext analysis and whether Plaintiff received differential treatment based on her race. *See Sischo-Nownejad*, 934 F.2d at 1111 ("[I]n evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facie case.").

Next, "the most typical type of circumstantial evidence [of pretext is] a difference in race between [the plaintiff] and the relevant decision-maker" or between the plaintiff and their replacement. *Dean v. Avis Budget Car Rental, LLC*, 491 F. App'x 813, 814 n.2 (9th Cir. 2012). This "most typical type of circumstantial evidence" appears to exist here, as Plaintiff is Black, while Leifer, the supervisor who gave Plaintiff the "ineffective" evaluation rating that led to her termination, and one of Plaintiff's possible replacements after her termination were not Black.[4] *See id.*; *cf. Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (replacement of an older employee with a substantially younger employee is circumstantial evidence of age discrimination). In addition, around the fall of 2020, Plaintiff had been removed from her self-contained classroom, and a white teacher, Kyla Fisher, was then assigned to Plaintiff's former classroom—not necessarily officially a replacement but akin to one. (ECF No. 36-1 at 30; ECF No. 40-1 at 4-5; ECF No. 40-2 at 3.)

As further background, before the 2020-2021 school year, Plaintiff had made requests to the regional superintendent and several others that Leifer not be her supervisor. (ECF No. 36-1 at 30-32; ECF No. 36-2 at 44-45.) But, according to Plaintiff, her request was not fulfilled, while a white teacher's request to change supervisors from Leifer to someone else had been granted. (ECF No. 36-1 at 30-32; ECF No. 36-2 at 44-45.) Defendant counters that that white teacher, Debra Millett, did receive a new supervisor, Principal Willis, but that Willis "on her own accord" made the decision to supervise Millett in order to provide her support, not because Millett requested a new supervisor. (ECF No. 36 at 17.) Leifer's deposition testimony does indicate that she "wasn't aware if [Millett] ever asked for another supervisor," but it does not fully support

---

[4]According to Leifer's deposition testimony, one of Plaintiff's possible replacements, Josh, was white, and the other, Danielle, was African American and Hawaiian. (ECF No. 36-2 at 24-25; ECF No. 40-1 at 3-4.) While not stated explicitly in the record, the Court draws reasonable inferences that Leifer is not Black because Defendant indicated in at least four instances that certain other assistant principals who supervised, mentored, or evaluated Plaintiff were African American but did not provide a racial descriptor for Leifer. (ECF No. 36 at 3, 5, 9, 10.) The absence of a racial descriptor where race is relevant generally indicates that an individual is white or at least does not share the same or similar race as the complaining party.

9

Defendant's contention. (ECF No. 36-2 at 35.) According to Leifer, she recalled that Willis took over supervising Millett from her but "[did not] recall exactly why" except that one of the factors might have been that Millett "needed support." (*Id.* at 36.) A dispute of fact therefore exists regarding this alleged instance of prior differential treatment that may support Plaintiff's racial discrimination claim. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 ("[A]n employee [may] us[e] the prior acts [of discrimination] as background evidence in support of a timely claim.").

Considering all the circumstantial evidence cumulatively and in the light most favorable to Plaintiff, the Court finds that Plaintiff has proffered sufficiently specific and substantial evidence from which a reasonable juror could find that Defendant's proffered reasons for Plaintiff's "ineffective" evaluation rating and subsequent termination were pretext for racial discrimination. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072-73 (9th Cir. 2003) (noting that summary judgment is often inappropriate in Title VII cases because an "employer's true motive in an employment decision is rarely easy to discern" without a "searching inquiry" that is "most appropriately conducted by a factfinder, upon a full record"). Accordingly, the Court denies the Motion as to Plaintiff's racial discrimination claim.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 36) is granted in part and denied in part, as specified herein. The motion is granted as to Plaintiff's age discrimination and retaliation claims and denied as to Plaintiff's racial discrimination claim.

It is further ordered that, under LR 16-5, the Court finds it appropriate to refer this case to United States Magistrate Judge Nancy J. Koppe to conduct a settlement

conference, and the case is so referred. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 19th Day of August 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE